The next case is Bustillos v. City of Artesia, 22-2046. Good morning, Your Honors. I'm going to attempt to reserve two minutes for rebuttal, but we'll see how that goes. May it please the Court. This appeal really boils down to a single simple issue, whether Corporal David Bailey reasonably suspected Albert Bustillos of criminal activity when he demanded Bustillos' identification outside Navajo Refinery on September 11, 2018. Had the District Court assessed the totality of the circumstances known to Corporal Bailey and had it done so from the perspective of a reasonable officer, as required by long and well-settled law, it would have been compelled to conclude Corporal Bailey did have reasonable suspicion of criminal activity and was therefore entitled to qualified immunity and judgment on all of Bustillos' claims against him. Are you contending that there's a mistake of fact issue in this case? Well, to, I guess I'm not sure about your question, Your Honor. I don't, I'm not contending the District Court made any mistakes. No, no. I'm saying, I'm talking about in terms of what the reasonable suspicion could be based on. Is it, are you contending that your client made a mistake of fact in thinking that, like the property line, for example? Yes, Your Honor. Yes. That is an undisputed mistake of fact that my client drew, that my client made in this case. And it's our contention that that just, that that mistake was reasonable, unquestionably reasonable and there's no evidence in the record from which you could conclude otherwise given Navajo's own employees thought their property line extended all the way to the curb. When did they say that? There was, in the record, there is, there is, I think one of the, the security guard told Mr. Bustios that the refinery owned all the way to the curb and then there's another point in his videos where a, another employee drives up in a truck and tells him, no, actually we own past that barricade all the way to the curb or something along those lines. So that evidence is in our summary judgment motion originally filed. Should we, should, should we consider on appellate review the entirety of Mr. Bustios' live stream on his video? I mean, I think you should, you should consider the material facts that are shown on the video, sure. But to the extent any facts, there's, there are plenty of facts shown on it that I think are not material and should not be considered in the reasonable suspicion calculus at all. Like for example, this, Corporal Bailey's statement, you know, after he arrived or things like that. So statements that arguably go to his subjective intent, which is completely irrelevant for the reasonable suspicion standard. If you watch the entirety of the video, it seems like Mr. Bustios says very credibly over and over again and explains to them why, based on ordinances and such, why he is not on the property and that he's on public property. And he says so to the officer and he says so very credibly and doesn't appear anybody really challenges that. So why, I mean, the officer has an obligation before he arrests him anyway and assuming that he had, I mean, it seems to me he has an obligation to research that and say, well, is this the property or not? Is this the property line? And he seems to accept that it, that Mr. Bustios is on public property. And he's, he's not, you know, and of course he's arresting him for that. The thing is, I mean, the issue at the center of this appeal is whether the facts known to Corporal Bailey as he arrived on scene and when he made his demands support objective reasonable suspicion. The fact that Bustios was or was not ever on or was on public property the whole time is not the only factor here. I mean, we've got a multitude of information he had on hand when he made that demand for ID and I'll just jump right, I'll jump right into that. These are the undisputed facts that. Can you, can you take those facts and relate them to the various crimes that you say that he did have reasonable suspicion of instead of just reciting the facts? Sure, I can, Your Honor, but. Are you familiar with the facts? A big point of our brief is that we don't have to demonstrate reasonable suspicion of any specific crime at all. That the reasonable suspicion standard first announced in Terry v. Ohio decades ago only requires reasonable suspicion of criminal activity. Of course, in the cases that are pertinent, very factually pertinent to this case, Keelan Mochek, where someone's arrested for concealing identity, we say exactly the opposite of what you're saying. We say you have to have a reasonable suspicion of some predicate underlying crime. We don't say some generalized criminal activity. We say particular predicate crime. So let's assume that we're going there and respond to that. Okay. If you would. Sure. So first off, when we're talking about, let's start with the disorderly conduct, that we have this first fact, the refinery is a sensitive location where the need for order and security are paramount. We have other similarities that Bustillos had distracted a security guard than two other employees away from their duties. Yeah. Okay, what predicate crime does he have suspicion of? What are we talking about? This one I'm discussing. Let's put it in context. This crime, predicate crime I'm discussing, is disorderly conduct. Okay. Yeah. So how did he distract the guard? That surprises me. I mean, the guard stops him and says, you know, what are you doing? And he says, well, I'm filming the facility. Maybe distract is the wrong word and the wrong point to focus on. The fact is that the security guard was employed by the refinery to look out for his security. And this Mr. Bustillos had presented a concern to him sufficient enough, not only that he approached him, but that he then didn't feel sufficient enough continuing to deal with him alone and called 911. And both of these facts in... So if I'm walking out on Champa with my video camera and I'm videotaping the Byron White courthouse and a court security officer comes up and says, you know, Shlomoza, what are you doing? I say, I'm filming the courthouse. And they say, well, I'm going to call 911. And so they come out. You're saying that there is reasonable suspicion to believe that I have committed disorderly conduct? Because I've got a video camera in a public forum videotaping a public facility? I mean, possibly. I have to get your hypothetical down more clearly. You're saying the court security guards notice you and they call 911? Yeah. Yeah. I think that might raise reasonable suspicion based on Navarrete versus California. I really do. Okay. Counsel, before you move on to the other crimes that are at issue or maybe at issue, isn't the reason why Mr. Bustillos was arrested because he didn't give ID? Yes. That is the reason? Yes. And so is it possible that what you have here is a mistake of law that informs the reasonable suspicion? Because it seems like your client, separate from all the stuff that, you know, disorderly conduct and so on, that seems kind of post hoc. It seems like it's based on some legal research that post dated the events. That he thought that he could, that your client thought that that was totally legitimate to arrest someone for failing to give their ID. Is that a reasonable mistake of law? I think, first off, I don't think the record is sufficient to conclude he made that mistake of law. I mean, he knew as he pulled up that he'd had a 911 report from the security guard that had been described to him as a suspicious person filming the refinery. He knew that when he got up there he saw Bustillos arguing with his fellow officer who'd arrived on scene before him. So your argument, just so I'm clear, your argument doesn't, nothing about your argument relates to what I'm suggesting, which is that reasonable suspicion here can be perhaps sustained in your client's favor because of a reasonable mistake of law. I mean, if you, if your honors see that my client made a, I don't think the record is clear on that, but no, I don't think, but if there was a factual finding here that my client made a mistake of law, I think that would be, would still entitle him to. Well, he clearly did make a mistake of law. He did believe that he could arrest him for refusing to provide ID without any underlying circumstance or crime or reasonable suspicion of a crime. So he did, he did make a mistake of law under fairly clearly established case law. If you assume he had not already decided he had reasonable suspicion at that time to demand ID. I thought we, well. I don't, I don't think you can make that assumption on this record, your honor. I just have to disagree with that. But I'm going to move on to the next prong. Even if the district court was right that reasonable suspicion was lacking here, it was wrong to conclude any violation was clearly established. To be clearly established, the law has to be such that every reasonable official would understand the conduct in question violated the constitution. The district court concedes Bastios did not point it to a factually identical case. And as we see it, he didn't even point it to a similar case. And the most factually similar cases that were raised found reasonable suspicion. Yet the district court disregarded these and concluded this was one of those rare cases where the violation was so obviously egregious that less specificity from the law would suffice. Can I ask you a question? So, if you prevail on that argument, on your Fourth Amendment claim, on the First Amendment claim, you rely on Neese versus Bartlett to say, well, if there's probable cause of the underlying crime, then there is no retaliation First Amendment liability. But if we reject the Fourth Amendment claim, not based on the presence of reasonable suspicion, but arguable reasonable suspicion, can you still rely on Neese versus Bartlett even though there wouldn't have been a finding of probable cause? It must have been a finding of arguable probable cause. You know, Your Honor, that is precise question has not occurred to me. And I have not looked into it. I would imagine so that are arguable or at least the case law out there on this issue about whether reasonable suspicion would at least have rendered any violation not clearly established in either the Fourth Amendment or the First Amendment context. And another thing I want to point out about the First Amendment claim is that, as we see it, the district court did not point to any undisputed evidence of retaliatory motive on this case, which is also an essential element of the claim. Lastly, I will just briefly address Bastios' state law claims for false arrests and malicious prosecution. The district court agreed that they hinge on a lack of reasonable suspicion. For the reasons already discussed, we contend reasonable suspicion did exist in this case. And we urge this court not to entertain plaintiff's argument about declining to exercise supplemental jurisdiction. The standard of review for exercises of jurisdiction is abuse of discretion. And plaintiff didn't even argue that, much less demonstrate it here. Not to mention he never challenged the initial exercise of jurisdiction in the court below. If that's all you guys have for me, I want to save the remainder of my time for rebuttal. Do you have any questions? No. Okay. Thank you. Thank you, Your Honors. You may want to raise that up a little bit. I am a soft talker. May it please the court and counsel, my name is Joe Kennedy and I represent Mr. Bastios in this matter. I think I'd like to start initially with commenting that I think there is a misapprehension about the legal standard in this matter because it is a concealing identification issue. So I think Keyline and Corona versus Aguilar and Mosek make clear that there must be reasonable suspicion of a predicate criminal act. That it's different than a Terry Stockton. I think Terry goes a long way towards saying that there has to be some criminal activity, there has to be something. And I think, frankly, because of the basic premise of Terry in other cases is because drug activity is sometimes difficult to categorize into exactly distribution or things like that. So I think the statutory, and these are all New Mexico cases, so we're dealing with a statute in New Mexico that has been decided upon by this court numerous times and in New Mexico courts. And I think the purpose of the statute is to allow officers to engage in investigations when there is reasonable suspicion of a criminal predicate act. The statute doesn't say predicate act, though. Is the statute ambiguous at all? I don't think it's ambiguous at all. It just, I believe the language is it's not lawful discharge of the duties of the officer. It's the legal, something to do with the legal duties of the officer. So I think in that sense, that's what the statute says. But I think these court cases are, the Tenth Circuit is very clear on that, though. And even there's an unpublished decision that I just came upon in preparing for the oral opinion from 2011, which clearly was a case involving a witness, detention of a witness. And the Tenth Circuit panel in that case, it's good for the analysis, basically says, no, no, no, that's not the standard here. It's got to be a criminal predicate act. The person has to be investigated for a crime. But you acknowledge that Officer Bailey doesn't have to have been aware of it, doesn't even have to realize it today. Right. I agree with that, Judge. That's clearly established law. But it is important factually now in this case, what did Officer Bailey actually know? And actually what he knew is clearly just the dispatch. And I think that's clear just not only from the dispatch records, from I think Officer Bailey's testimony, was that basically he got a call from dispatch that there's a fellow, suspicious fellow, filming outside the fence into the refinery. That's all he knows. He comes, and Mr. Bustillos is in a public area. He doesn't gather any facts. There's no evidence that he knows any more facts about the call or about Mr. Bustillos. And he's got readily available witnesses there to ask, was he trespassing? What have you done, Corporal Sanchez, who's the officer who arrived before him? He does none of this. Can we consider, or should we consider the entirety of Mr. Bustillos' video? I don't think so, Judge, frankly, because I think we're focused in on what the officer, the objective, reasonable information that the officer has at the time he makes the arrest. And obviously he's not watching Mr. Bustillos' video. So he doesn't know. What about the point in which he is arrested? I mean, obviously Officer Bailey is aware of that. Absolutely. I mean, I think that's the relevant material point. And he's arrested under that video, right under that Navajo sign, right at the corner, literally. I use the word literally because it's not, of course, literal. But it's in very, very close proximity, within a few feet of that Navajo sign. So why is it at least a reasonable mistake of fact that he was physically on Navajo property? He's right under the Navajo sign. I don't, signage in and of itself, and now we're in an area of objective reasonableness because there's no subjective belief. I mean, certainly Corporal Bailey didn't say, hey, he's under the sign. So we are in the area where now we're judging would an objectively reasonable police officer believe that was trespassing. And I think the first response to that is you have to look at the criminal trespass statute, which is posted property or you remain on property when told not to get on property. So it's not just I'm accidentally on someone's property. It's not criminal trespass. And this is a well-known statute that's applied commonly by police officers in all sorts of different situations. Well, the Navajo officer tells them, at least according to the dispatch, that Officer Bailey, of course, when he comes up with Officer Sanchez and Mr. DeStias, he at least has reasonable basis to believe that he has been told to get off the property that the Navajo officer thinks he is physically on Navajo property. When he ultimately executes the arrest, he's under a Navajo sign. So it seems to me that Officer Bailey has a pretty good argument that he has a reasonable basis factually to believe that he had traversed Navajo property and he had been, albeit not posted, but that he had been told to leave and that he had been on Navajo property. What's wrong with that? Respectfully, I disagree with the court on the record. Okay. Because he doesn't have any of that information about what the Navajo guards believed. All he has is dispatch. He doesn't even have the 911 call. All he has is dispatch saying this guy is outside the fence filming us. He doesn't have any of this information about either. He says his testimony is, well, I thought he was walking up and down the fence, but he doesn't have any objective information about that. Does the whole decision, and I'm going to ask this and then I'm going to shut up. I promise. But does the whole decision on the reasonable mistake on trespass, does it all boil down to whether you could reasonably infer that when he is told that he is outside the fence filming in to the refinery, that a reasonable officer could believe that he was between the fence and the concrete barrier? If we say yes, then you lose. If we say no, you win. I have a backup for that, but that's exactly what's my concern, frankly, when we take depositions and things like that, that that's essentially what he was saying was that's what I imagined. I mean, he's saying he's outside the fence, but I imagine this guy walking up and down in between the concrete barrier and the fence. Now, our backup is that's not a reasonable belief that that's private property because it's clearly a pedestrian way. But I don't think it's a reasonable belief inference from the call. I mean, this is – and there are readily available witnesses there to say, hey, tell me what happened. This is not a split-second decision that the officer had to make. I mean, Corporal Sanchez is there, he's there now, and now they have witnesses. They can all talk about this and not say immediately, hey, we can arrest him for this one thing, and that's sufficient. So are you saying that even if he's suspected based on this very little information he has, which is he's in the proximity of the fence filming, that that would not – that once he arrived there, he could have done some minimal investigation to dispel that? Is that what you're saying? Absolutely. To dispel reasonable suspicion, but is that really – Absolutely. It's an easy – even if – I don't think it's a fair inference anyway from the language, he's outside the fence filming into the refinery, that someone's walking up and down the fence. But it's easily dispelled. In addition, I think we've got to go back to the trespassing ordinance too, because it has to be posted or it has to be – I told him they get off and he won't get off. And that's not – there's no evidence of that at all. I think the district court conducted an analysis considering all the factors that the defendant raises in a very thoughtful opinion. And actually, all the factors that the defendant says that the district court didn't consider, the district court did consider and dealt with. And I think in this situation, the district court is correct and I'd ask the court to affirm. Thank you. Do you have any questions? Unless there's anything else, Judge. Hold on just a second. On the clearly established problem, can you explain your argument on that? The argument on that – Do we look at the underlying cases on whether there's reasonable suspicion of the underlying predicate crime? Or do we just look at what – do we decide, all right, there is or there isn't reasonable suspicion, so there's a Fourth Amendment violation and it's clearly established that that's a Fourth Amendment violation, which is what our case law seemed to suggest in Keylong. Right. But did we go far enough there is what I'm wondering. Yeah, and I think now I'm going to have to use the extra five minutes I have here to talk about this because it is obviously quite intricate. I think in reading Keylong and then especially reading Corona and how the analysis is completed, and I think what the Tenth Circuit is doing is saying essentially, listen, we understand in qualified immunity that it's not just the general legal statement of you can't arrest without a reasonable suspicion of predicate act. But what we're going to do is we're going to say, okay, we're going to look at this through an arguable probable cause analysis with the consideration of how close these facts are to Keylong and our other cases and maybe to New Mexico cases. So I think that's the analysis is, is there arguable probable cause for this arrest based upon all the factors, all the criminal statutes in New Mexico, our precedent in Keylong and Corona? And Corona is very interesting because the argument – there was a lot of argument about the location was different in Corona. The person was a passenger in the backseat of a car, and Keylong was a woman in the front yard. And I think it was Judge Baldock said, look, we're not going to cabin Keylong that carefully. There are factual differences. And the innumerable factual differences of lack of probable cause means that I think we're in an area of arguable probable cause with an eye towards how closely are these facts aligned. And essentially this is a person engaged in lawful activity and is being – and whose identification is being demanded in a situation in which a reasonable police officer should know that he has no right to demand that. And I would say – You didn't make any argument, did you, that assuming there is reasonable suspicion of a predicate underlying crime, that there still was not probable cause to arrest because of what we said in Mocheck, which is that the statute is not clear at all about what concealing identity is, and that perhaps – and that even with an underlying crime, it may not constitute concealing one's identity as this statute is written. Yes, we didn't make – we really didn't make that argument below, Judge. Thank you. And just – well, and that becomes my one final argument, is it was not argued below the whole concept of reasonable mistake of law. While it struck me sitting there that it was something that could have been argued, but was not argued. And so we would obviously like the opportunity to argue that before this court decides it. Thank you. Thank you. Your Honors. You may want to lower that. Yes, thank you. I'd just like to address a few brief points. Going back to this issue of whether specific crime has to be shown reasonable suspicion of a specific crime, I don't think, looking at Keylon, that this question we have raised in this issue was raised to the court there or considered by the court. And I don't think it was raised in Mocek, and I don't think it was raised in Corona, which, of course, was decided after the arrest in this case in any event. The other thing is that Keylon and Corona are easily distinguished on their facts. The demand for identification there was made of the person – of a person connected to the person suspected of reasonable suspicion, but not the person suspected of a crime themselves. And additionally, Keylon, plaintiff, was outside of her home, which the Supreme Court has recognized as a special place for constitutional purposes. I think Justice Ginsburg called it the first among equals in one of her later opinions on the issue. And just lastly, these are all of the undisputed facts that go to why reasonable suspicion existed here. Again, the nature of the location. The federal government itself views filming as an indicator of suspicious activity at places like this. This was the anniversary of the September 11th terrorist attacks, something Governor Bailey was indisputably mindful of the day he arrived on there. And it's also Bailey's experience that Bastios' behavior was out of the ordinary. From his experience, it wasn't common to see pedestrians in the area at all, much less traversing the perimeter filming its interior. And so those are some of the facts I really didn't get to touch on earlier that I wanted to just bring up that enhance and belong – that are entitled to consideration in the reasonable suspicion analysis. And I thank you, Your Honors, for your time today. Unless you have any more questions for me, that's all I have. Okay. Thank you very much. Well presented on both sides. This matter is submitted.